# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF MASSACHUSETTS

JOHN FINSTEIN, *et al.*,     )
          )
    Plaintiffs,     )
          )
v.          )    Case No. 1:10-cv-12118
          )
SERVICE CORPORATION     )
INTERNATIONAL, *et al.*,     )
          )
    Defendants.     )
          )

## MEMORANDUM OF LAW IN OPPOSITION
## TO PLAINTIFFS' MOTION TO REMAND TO STATE COURT

Defendants Service Corporation International, SCI Funeral and Cemetery Purchasing Cooperative, Inc., SCI Eastern Market Support Center, L.P., Jane D. Jones, Gwen Petteway, and Thomas Ryan (collectively, "Defendants") hereby respond to Plaintiffs' Motion to Remand to State Court (the "Motion"). This Court has jurisdiction over this action pursuant to the Class Action Fairness Act ("CAFA"), 28 U.S.C. § 1332(d). Plaintiffs do not challenge the existence of minimal diversity or the size of the class, but do challenge whether Defendants have met their burden regarding the amount in controversy. Defendants have met their burden of demonstrating a "reasonable probability" that more than $5,000,000 is at stake, and Plaintiffs offer no basis for the Court to conclude that their claims are for less than the jurisdictional amount. Accordingly, Plaintiffs' Motion to Remand should be denied.

## I.    BACKGROUND

On October 5, 2010, Plaintiffs John Finstein and Daniel McCauley (each individually a "Plaintiff" and collectively "Plaintiffs") filed a "Class Action Complaint" (the "Complaint") in the Superior Court of Bristol County, Commonwealth of Massachusetts, on behalf of themselves and "all other employees similarly situated." (Compl. ¶ 1.) In the Complaint, Plaintiffs assert claims against Defendants for

violation of various provisions of the Massachusetts General Laws,[1] breach of contract, fraud, unjust enrichment/restitution, breach of the implied covenant of good faith and fair dealing, conversion, and misrepresentation.   Plaintiffs base their claims on alleged policies and practices put in place and effectuated by Defendants, whereby Plaintiffs allege that they were not compensated for all time worked.

Plaintiffs identify as Class Members "those employees of Defendants who were suffered or permitted to work by Defendants and not paid their regular or statutorily required rate of pay for all hours worked." (Compl. ¶ 23.) Plaintiffs state that the class size is estimated at more than 50 current or former hourly employees. (Compl. ¶ 209.) Plaintiffs do not define a time period for applicable employment in the Complaint, but allege that the statute of limitations was tolled upon the filing of two previous federal actions. (Compl. ¶ 17.)

In their Complaint, Plaintiffs request the following relief: an order permanently restraining defendants from engaging in pay violations; an award of unpaid wages, including fringe benefits; treble damages pursuant to MASS. GEN. LAWS ch. 151 § 1B; punitive damages; reasonable attorneys' fees and costs; and pre-and post-judgment interest.

Plaintiffs identify as class counsel Thomas & Solomon LLP and Margolis Edelstein ("Plaintiffs' counsel). Since 2006, Plaintiffs' counsel has been pursuing Fair Labor Standard Act ("FLSA") and other wage claims against Defendants in multiple courts around the country. In 2006, Plaintiffs' counsel initiated FLSA and other wage claims against Defendant SCI in *Prise v. Alderwoods Group, Inc.*, No. 06-1641 in the United States District Court for the District of Pennsylvania ("*Prise*"). The *Prise* Court dismissed SCI, so Plaintiffs' counsel then asserted state law wage claim actions on behalf of the same "employees" that it seeks to represent in this case.

The Complaint in this action is a continuation of that effort. For example, the proposed class of employees includes all "employees of Defendants who were suffered or permitted to work by Defendants

---

[1] Plaintiffs allege violations of MASS. GEN. LAWS ch. 151 § 1A, regarding the payment of overtime, ch. 151 § 15, regarding the maintenance of employment records, and ch. 149 § 100, regarding the provision of meal breaks.

and not paid their regular or statutorily required rate of pay for all hours worked." (Compl. ¶ 23.) Also, in discussing the Class, Plaintiffs include employees who performed work in certain categories (Community Work Policy, On Call Pay Policy, Meal Break Policy, Unrecorded Work Time Policy, Lump Sum Policy and Regular Rate Policy). (Compl. ¶ 25.) The allegations describing the employees who worked in those categories does not contain any geographical boundaries, nor is the class limited to employees within Indiana.

This broad definition of the employees who make up the Class Members in the Complaint is consistent with the allegations which were part of an action filed in California state court following *Prise*. Specifically, after dismissal of SCI in *Prise*, Plaintiffs' counsel filed an action in California State Court, *Bryant v. Service Corporation International*, Case No. RG07359593 (the "California Action"). *See* California Amended Complaint, attached as Exhibit 1.

The defendants in the California Action include all of the Defendants in the current action. And the allegations of the California Action are virtually identical to the allegations of the Complaint here. The California Complaint is asserted on behalf of Class Members who are "employees and former employees of defendants who were suffered or permitted to work by defendants and not paid their regular or statutorily required rate of pay for all hours worked." *See* Exhibit 1 ¶ 229. In the California Action, Plaintiffs' counsel alleged that the "class size is believed to be over 10,000 employees, a significant percentage of whom are within California." *See* Exhibit 1 ¶ 230.

These same Defendants removed the California Action to the United States District Court for the Northern District of California, Case No. CV-08-1190 SI. The sole basis for the removal to federal court was CAFA. *See* Notice of Removal filed in the California Action, attached as Exhibit 2. Thereafter, Plaintiffs' counsel filed a Motion to Remand (California Action Dkt. 34). After these Defendants filed their Response and Plaintiffs' counsel filed their Reply, the Court denied Plaintiffs' Motion to Remand. *See* California Action Dkt. 51-54 and 56; Declaration of Lonnie Williams, attached as Exhibit 3.

One of the issues addressed by the court in the California Action was the conflicting position taken by Plaintiffs on the issue of CAFA. The Court noted that in the first iteration of this litigation, in *Prise*, Plaintiffs' counsel argued that the court could exercise original jurisdiction over the state law claims at issue here, specifically because CAFA's $5,000,000 amount in controversy had been met. *See* California Action Dkt. 53. The Court found that position more or less inconsistent with their current position, which was that Defendants could not establish that the amount in controversy exceeds $5,000,000. *See* Exhibit 3 ¶ 4; California Action Dkt. 56.

For two years after the California Action was removed to federal court, Plaintiffs' counsel vigorously litigated and attempted to obtain, pursuant to Fed.R.Civ.P. 23, certification of a nationwide class. Plaintiffs abandoned those efforts on January 15, 2010, when Plaintiffs' counsel filed a Notice of Withdrawal of Plaintiff's Motion for Rule 23 Class Certification. In July 2010, the Plaintiffs in the California Action sought and obtained an Order dismissing the claims asserted in Plaintiffs' Second Amended Complaint relating to state law claims of employees in states other than California.

In January 2008, while simultaneously prosecuting the California Action, Plaintiffs' counsel filed a case in Arizona alleging FLSA and other violations against Defendants in *Stickle v. SCI Western Market Support Center, L.P.* ("*Stickle*"). The allegations of the *Stickle* Complaint are also virtually identical to the Complaint here. *See Stickle* Complaint, attached as Exhibit 4. The Plaintiffs in *Stickle* include John Finstein and Daniel McCauley, the Plaintiffs in this case. As in the California Action and this case, Class Members in *Stickle* are defined so as to encompass all employees who worked at SCI funeral locations. *See* Exhibit 4, ¶ 16.

On September 30, 2009, under the FLSA's lenient standard, the *Stickle* Court granted Plaintiffs' request to conditionally certify a class of current and former employees. In connection with the Court's Order, Defendants provided Plaintiffs with a list of employees who worked for various Service

4

Corporation International subsidiaries.[2]  The total number of employees contained on that list was 10,745.[3]  *See* Exhibit 3.  Pursuant to a court order, that list was limited to certain employee job titles and to the period from December 2005 forward.  *Id.*

In connection with the Remand Motion in the California Action, Defendants submitted evidence that the number of Non-Exempt Employees who worked for SCI's subsidiaries at all of their nationwide funeral locations from December 5, 2003 to February 28, 2008 was 31,814.  *See* Declaration of Joseph Schmuck, attached as Exhibit 5.[4]  The difference in the numbers is due to the limitation placed on the job titles of employees that are part of *Stickle* and the different time periods at issue in the two cases.  *See* Exhibit 3 and 5.  Defendants also searched payroll records for the last known hourly rate for certain employees named as plaintiffs in *Bryant v. Service Corporation International* and *Helm v. Alderwoods*. The hourly rate for these employees varied from $7.14 to $26.52 per hour, or an average of $16.83.  *See* Exhibit 5 ¶ 13.

This Complaint is a continuation of Plaintiffs' counsels' efforts over the past four years.  And in addition to the current action, Plaintiffs' counsel, within a two-week period, filed sixteen additional actions against Defendants in state courts in Alabama, Arizona, Colorado, Florida, Georgia, Indiana, Louisiana,[5] Massachusetts, Michigan, New York, North Carolina, Ohio, Oklahoma, Pennsylvania, Tennessee, and Washington.  Significantly, as it relates to Plaintiffs' current Motion, Plaintiffs' counsel

---

2 None of the "employees" worked for any of the named Defendants.  To the contrary, all of the employees were direct employees of certain state specific entities.

3 The *Stickle* Court specifically limited the individuals subject to the conditional certification to certain job classifications.  In order to obtain that list, including 10,745 different names, Defendants were required and did obtain a list of employees that went beyond the limited job classifications set forth in *Stickle*.  The number of names on that larger list is more than 20,000.  *See* Exhibit 3.

4 Mr. Schmuck's Declaration was filed in opposition to the Motion for Remand in the California Action. *See* California Action Dkt. 51.

5 Plaintiffs filed a Motion for Remand in the Louisiana Action which is virtually identical to the Motion here.  On December 22, 2010, the District Court for the Eastern District of Louisiana denied Plaintiffs' Motion for Remand.  *See* Order, attached as Exhibit 6.

also filed an action against Defendants in federal court in Virginia. All of these Complaints, like the California Action and *Stickle*, contain virtually identical allegations.

Plaintiffs filed the Virginia Action in the U.S. District Court for the Western District of Virginia. Stanfield Division, captioned *Juanita Walker on behalf of herself and all other employees similarly situated, Plaintiffs, v. Service Corporation International et al*, Civil Action No. 4:10-cv-00048-jlk. *See* Virginia Complaint attached as Exhibit 7. The sole basis for federal jurisdiction in that case is alleged to be 28 U.S.C. § 1332(d)(2). Specifically, Plaintiffs allege that the class size is at least 100 employees and that the aggregate damages in that case are worth more than $5,000,000, exclusive of interest and costs. *See* Exhibit 7, ¶¶ 18-20.

Moreover, the identity of the potential Class Members in the Virginia case and in the case before this Court are identical. In the Virginia case, Plaintiffs allege that the "Class Members are those employees of defendants who were suffered or permitted to work by defendants and not paid their regulatory or statutory required rate of pay for all hours worked." *See* Exhibit 7, ¶ 23.

## II.    LEGAL ARGUMENT

### A.    Defendants' Burden of Proof Regarding Jurisdictional Amounts.

Defendants removed the present case based on CAFA, 28 U.S.C. § 1332(d). In their Motion, Plaintiffs claim that Defendants have not demonstrated the requisite amount in controversy for federal jurisdiction under CAFA.

The party seeking removal of a case to federal court bears the burden of establishing federal jurisdiction. *Amoche v. Guar. Trust Life Ins. Co.*, 556 F.3d 41, 48 (1st Cir. 2009). However, this Court has explained that the burden "is not an onerous one." *Lenahan v. Dick's Sporting Goods, Inc.*, No. 10-11832-RGS, 2010 WL 5092254, at *1 (D. Mass. Dec. 8, 2010) (slip copy). *See also Manson v. GMAC Mortgage, LLC*, 602 F.Supp.2d 289, 294 n. 9 (D. Mass. 2009). If the plaintiffs do not allege specific damages, a defendant removing under CAFA must demonstrate a "reasonable probability" that more than $5,000,000 is at stake. *Amoche*, 556 F.3d at 49-50. Although the First Circuit has equated this with a

"preponderance of the evidence" standard, it has also explained that the term "reasonable probability" better describes the "preliminary nature of [the removal] inquiry," which occurs at the "pleadings stage where little or no evidence has yet been produced." *Id. See also Manson*, 602 F.Supp.2d at 294, n. 9; *Youtsey v. Avibank Mfg.*, No. 10-30100-KPN, 2010 WL 3452367, at *6 (D. Mass. Sept. 2, 2010). Consequently, under First Circuit precedent, the court should inquire into what each side has demonstrated with respect to the amount in controversy. *See Amoche*, 556 F.3d at 51; *Lenahan*, 2010 WL 5092254, at *1 ("a court considering the amount in controversy need not view the evidence solely in the light most favorable to the plaintiffs, but may review the evidence in the record presented by both sides"); *Manson*, 602 F.Supp.2d at 294, n. 9 (same). In *Amoche*, the First Circuit addressed the defendant's burden concerning removal in a CAFA case, and stated:

> [D]eciding whether a defendant has shown a reasonable probability that the amount in controversy exceeds $5 million may well require analysis of what both parties have shown. Merely labeling the defendant's showing as "speculative" without discrediting the facts upon which it rests is insufficient. *See Strawn* [*v. AT & T Mobility, LLC*], 530 F.3d 293, 299 (4th Cir. 2008) (finding the defendant's showing sufficient to establish the amount in controversy under CAFA where the plaintiffs had "offered nothing" to challenge the accuracy of the defendant's affidavit). In the course of that evaluation, a federal court may consider which party has better access to the relevant information. *See Evans v. Walter Indus., Inc.*, 449 F.3d 1159, 1164 n. 3 (11th Cir. 2006) ("Defendants have better access to information about conduct by the defendants, but plaintiffs have better access to information about which plaintiffs are injured and their relationship to various defendants.").

*Amoche*, 556 F.3d at 51.

Thus, to satisfy its burden, the defendant need not "research, state and prove the plaintiff's claim for damages." *Gafford v. Gen'l Elec. Co.*, 997 F.2d 150, 159 (6th Cir. 1993), *abrogated on other grounds by Hertz Corp. v. Friend*, 130 S.Ct. 1181 (2010). The defendant is "not required to prove the amount in controversy beyond all doubt or to banish all uncertainty about it." *Pretka v. Kolter City Plaza II*, 608 F.3d 744, 754 (11th Cir. 2010). Instead, a defendant can present specific factual allegations establishing jurisdiction and can support those allegations with "evidence combined with reasonable deductions, reasonable inferences, or other reasonable extrapolations." *Id.*

Defendants may submit a wide range of evidence to demonstrate the jurisdictional facts supporting removal, including calculations from the complaint's allegations; the plaintiff's own admissions; informal estimates or settlement demands; or affidavits from the defendant's employees, experts, or attorneys, concerning the expense to satisfy the plaintiff's demands. *See Meridian Sec. Inc. Co. v. Sadowski*, 441 F.3d 536, 541-42 (7th Cir. 2006) (listing several recognized methods of establishing the amount in controversy, explaining that a removing defendant may also find a better means of calculation); *Blumer v. AcuGen Biolabs, Inc.*, 638 F.Supp.2d 81, 86-87 (D. Mass. 2009) (concluding that class action plaintiffs adequately demonstrated the existence of federal jurisdiction under CAFA by submitting an affidavit from plaintiffs' counsel, setting forth a calculation of the average class member's claim based upon information gathered from class members); *Manson*, 602 F.Supp.2d at 293-94 (concluding that a removing defendant satisfied its burden by submitting the affidavit of a litigation analyst who had reviewed the defendant's internal records). In determining whether the jurisdictional amounts are satisfied, the question is not "whether the damages are greater than the requisite amount, but whether a fact finder might legally conclude that they are." *Bell v. Hershey Co.*, 557 F.3d 953, 959 (8th Cir. 2009).

Plaintiffs correctly note that the First Circuit in *Amoche* found insufficient evidence of the potential amount in controversy to prevent remand. *Amoche*, 556 F.3d at 52-53. However, the *Amoche* court emphasized that the removing defendants had presented "virtually no information about the potential class size." *Id.* at 52. Moreover, the defendant's own inadequate record-keeping practices led it to present an inflated estimate of the amount in controversy. *Id.* In contrast, this Court has found the "reasonable probability" standard satisfied where the defendant submitted a litigation analyst's affidavit setting forth estimates and calculations based upon the analyst's review of the defendant's internal records.[6] *Manson*, 602 F.Supp.2d at 294, n. 9. Similarly, this Court has found that the removing

---

[6] The court in *Manson* was also persuaded by the following: (1) the plaintiff's demand for cancellation of the challenged fees and costs; (2) plaintiff's contention that the named plaintiff was representative of the class; and (3) an undisputed number of class members, consisting of at least 1,000 persons. *Manson*, 602 F.Supp.2d at 294.

defendant satisfied its burden in a wage and hour case removed under CAFA, where the defendant estimated the amount in controversy by making conservative assumptions about the number of hours the putative class members actually worked, and presented evidence from its own records concerning the average number of hours the putative class members were actually paid. *See Lenahan*, 2010 WL 5092254, at *1.

In *Faltaous v. Johnson and Johnson*, 07-1572 (JLL), 2007 WL 3256833 (D.N.J. Nov. 5, 2007), the court explained that, in a case alleging unpaid wages and overtime, it is appropriate for a defendant to rely on a reasonable reading of the plaintiff's complaint as to the amount of hours worked off-the-clock as "the number of overtime hours worked is presumably not known by defendant . . . .[and] Defendant need not concede aspects of the complaint in order to prove federal jurisdiction." *Id.* at *8. The Court, therefore, concluded that because "Plaintiff's amended complaint places no limit on the amount of overtime pay sought, and alleges that the class members 'regularly' worked overtime hours . . . three (3) hours [of overtime] per week is a reasonable reading of the rights being litigated." *Id.* at *9; *see also Navarro v. Servisair, LLC*, No. C 08-02716 MHP, 2008 WL 3842984, at * 8 (N.D. Cal. Aug. 14, 2008) (concluding that defendant's use of one hour of unpaid overtime for estimating the amount in controversy is appropriate where plaintiff claimed that "he and others similarly situated regularly worked through their meal periods" and that "he and members of the class were not compensated for all hours actually worked and are entitled to one hour of pay for each day the meal period was not provided[;]" the court added that "[a]lthough unclear from the complaint, plaintiff seems to demand overtime pay for that hour").

Other federal courts have similarly concluded that a defendant may satisfy its burden of demonstrating the $5,000,000 amount in controversy by making reasonable, conservative assumptions based upon the total amount of potential liability. For example, in *Lewis v. Verizon Communications*, the plaintiffs filed a class action against Verizon based on "unauthorized" charges that plaintiffs incurred. *Lewis*, No. 10-56512, -- F.3d --, 2010 WL 4645465, at *2 (9th Cir. Nov. 18, 2010). Verizon presented an affidavit by its Senior Consultant for Product Management and Development which asserted that

"subscribers were billed more than $5,000,000, exclusive of fees and interest" during the applicable time period. *Id.* The plaintiffs filed a motion to remand, claiming Verizon did not carry its burden to prove the amount in controversy under CAFA. *Id.* The plaintiffs challenged Verizon's affidavit, as it attested only to total amounts billed, without differentiating between "unauthorized" and "authorized" charges. *Id.* The Ninth Circuit, looking to case law in other circuits, determined that Verizon's affidavit was proper. The Court found that the entire amount of the billings was "in controversy." *Id.* at *5. The Court stated that the amount in controversy is "simply an estimate of the total amount in dispute, not a prospective assessment of defendant's liability," and held that the defendant satisfied its burden of proving the requisite amount in controversy under CAFA. *Id. See also Spivey v. Vertrue, Inc.*, 528 F.3d 982, 985-86 (7th Cir. 2008) (similarly concluding that a removing defendant in an action for unauthorized billings satisfied its burden by submitting an affidavit showing that its total billings exceeded the jurisdictional requirement).

Moreover, it is well established that a removing defendant may base its calculations on the putative class as a whole, particularly where the plaintiffs' claims refer to the defendant's employees or the class as a whole. *See Johnson v. U.S. Vision, Inc.*, No. 10-CV-0690 BEN (CAB), 2010 WL 3154847, at *3 (S.D. Cal. Aug. 9, 2010) (holding that defendants properly estimated the amount in controversy based on the employees as a whole where "[t]hroughout the Complaint, Plaintiff generally refers to Defendants' employees as a whole, without using language to suggest that any less than all employees were injured for each cause of action.").

Further, a plaintiff cannot succeed on a motion to remand with mere conclusory statements that the defendant's showing is speculative without evidence supporting the contention that the defendant failed to satisfy its burden of proof. *See, e.g., Amoche*, 556 F.3d at 51 ("Merely labeling the defendant's showing as "speculative" without discrediting the facts upon which it rests is insufficient"); *Strawn v. AT & T Mobility LLC*, 530 F.3d 293, 299 (4th Cir. 2008) (concluding the defendant's showing was sufficient to establish the amount in controversy under CAFA where the plaintiffs had "offered nothing" to challenge

the accuracy of the defendant's affidavit); *Lewis v. Verizon Commc'ns*, No. 10-56512, -- F.3d --, 2010 WL 4645465, at *5 (9th Cir. Nov. 18, 2010) (finding the defendant's jurisdictional showing sufficient where the plaintiff did not attempt to demonstrate, or even argue, that the plaintiffs' damages were less than the amount asserted by the defendant); *Lewis v. Ford Motor Co.*, 610 F. Supp. 2d 476, 485 (W.D. Pa. 2009) (denying remand and stating that a plaintiff in challenging a notice of removal must do more than provide "their own speculation that [the defendant's] number was 'pulled from thin air.'").

Finally, in seeking remand, a plaintiff "cannot benefit by playing a cat-and-mouse game, purporting to disclaim damages in excess of [the jurisdictional amount] but refusing to admit or stipulate that her damages will not exceed that amount." *Oshana v. Coca-Cola Co.*, 472 F.3d 506, 511 (7th Cir. 2006). *See also England v. Advance Stores Co.*, No. 1:07-cv-00174, 2008 WL 4372902, at *2 (W.D.Ky. Sept. 22, 2008) ("[A] plaintiff should not be able to avoid removal by simply seeking an unspecified amount of damages."). For example, in *Dantinne v. Abbott Labs., Inc.*, the "[d]efendant estimated, arguably rather conservatively, that plaintiff would seek approximately eight hours of overtime . . ." No. 09-cv-01377-REB-MJW, 2009 WL 2843274, at *1 (D. Colo. Aug. 31, 2009). The plaintiff "counter[ed] that if he were to ask for only two hours of overtime per week, the potential damages would be reduced below the jurisdictional minimum. Tellingly, however, he [did] not affirmatively state that he, in fact, [was] seeking such a minimal level of overtime pay." *Id.* The court, therefore, concluded that the "[p]laintiff's hypothetical calculations, unsupported by a firm commitment to eschew damages exceeding the jurisdictional minimum amount-in-controversy, cannot defeat an otherwise properly supported notice of removal." *Id.* at *1-2 (also noting that the estimated overtime amounts, together with attorneys fees and statutory penalties, not disclaimed by plaintiff, were "more than sufficient to satisfy the jurisdictional minimum . . . .").

Defendants have shown a reasonable probability that Plaintiff's Complaint puts in controversy an amount greater than $5 million. This evidence is based upon the Complaint, the supplemental undisputed information regarding the California and Virginia Actions, and the information regarding the size of the

class and amounts claimed by Plaintiffs.   Thus, Defendants have satisfied their burden of proof that CAFA's jurisdictional requirements have been met.

**B.     Defendants Have Satisfied Their Burden Under CAFA.**

1.     Plaintiffs' Counsel Through Its Pleadings and Actions Have Established That Jurisdiction is Proper

The best evidence that the amount in controversy exceeds the requirements under CAFA has actually been presented by Plaintiffs' counsel in the various lawsuits that have been filed against these Defendants.[7]

First, there is the California Action.  As noted above, the potential class in that action at the time it was filed is virtually identical to the allegations presently before this Court.   Plaintiffs' counsel specifically alleged that the size of the class would approach 10,000 employees.   When Defendants removed that case to federal court based upon CAFA, Plaintiffs offered no objections.

Second, Plaintiffs' counsel has filed an identical action against Defendants in federal court in Virginia.  *See* Virginia Complaint, attached as Exhibit 7.   The Virginia Complaint includes virtually all the same causes of action against Defendants as the present action — claims for breach of contract, fraud, unjust enrichment/restitution, conversion, and misrepresentation.   The Virginia action is also predicated upon alleged policies and practices put in place and effectuated by Defendants, whereby Plaintiffs were not compensated for all time worked.   Plaintiffs define Class Members identically in the Virginia complaint and in this case: "those employees of Defendants who were suffered or permitted to work by

---

[7] In the Memorandum in Support of their Motion to Remand, Plaintiffs contend that Defendants' improperly rely upon the allegations Plaintiffs have made in various other lawsuits they have filed. Specifically, Plaintiffs argue that the Defendants have failed to demonstrate that the Class Members in the present litigation could recover the same types and amounts of damages as in the Virginia litigation. To the contrary, Defendants have presented significant evidence of the similarities between the present lawsuit and the Virginia litigation, as described in even greater detail below. Moreover, courts have recognized that it is appropriate to consider prior lawsuits between the parties in determining the potential amount in controversy. *Brown v. Jackson Hewitt, Inc.*, No. 1:06-cv-2632, 2007 WL 642011, at *4 (N.D. Ohio Feb. 27, 2007). *See also Stewart v. Tupperware Corp.*, 356 F.3d 335, 339 (1st Cir. 2004) (recognizing that the amount in controversy might be demonstrated by reference to amounts actually recovered by plaintiffs in similar cases.)

Defendants and not paid their regular or statutorily required rate of pay for all hours worked." *See* Compl. ¶ 23; Exhibit 7, ¶ 23. The prayer for relief is also identical to the present action, although it excludes Plaintiffs' demand in this action for treble damages pursuant to MASS. GEN. LAWS ch. 151 § 1B. However, unlike the current action, in the Virginia Complaint, Plaintiffs assert that federal jurisdiction is proper pursuant to CAFA. Plaintiffs specifically state that the class is at least 100 employees and the aggregate damages in the case are more than $5,000,000. *See* Exhibit 7 ¶¶ 19-20.

There is no reason to believe that the jurisdictional requirements for CAFA are satisfied in the Virginia action, but not in the present action. In fact, with the identical definition of Class Members and the identical claims and prayer for relief, Plaintiffs cannot reasonably take the position that the jurisdictional limits are met in one case, but not in the other.

Further, for the purpose of estimating the number of potential Class Members, even assuming that the class is limited to only those employees in Massachusetts, the number of employees within Massachusetts far exceeds those in Virginia. The state specific entities related to Defendants have approximately 300 employees in Virginia. *See* List of Virginia Employees, attached as Exhibit 8; Declaration of Lonnie Williams, attached as Exhibit 3; Excerpts of SCI's 2009 Annual Report, attached as Exhibit 9. The state specific entities related to Defendants have at least 162 employees in Massachusetts. *See* List of Massachusetts Employees, attached as Exhibit 10. While Plaintiffs contend that Defendants have provided no evidentiary support for their estimation of 162 Massachusetts employees, Defendants have provided precisely the type of information this Court relies upon to assess whether the removing party has satisfied its burden of proof concerning the amount in controversy. *See Manson*, 602 F.Supp.2d at 294 (affidavit information based upon a review of the defendant's internal records); *Lenahan*, 2010 WL 5092254, at *1 (estimation based upon conservative assumptions and a review of company payroll records). As Defendants explained in their Notice of Removal, the 162 Massachusetts employees were calculated pursuant to a review of the Defendants' employment records, and Defendants have provided an affidavit of Lonnie Williams concerning the same.

Finally, there is no reason to believe that the Virginia plaintiffs' potential recovery will be any different from the Massachusetts plaintiffs' potential recovery. And in fact, the Massachusetts plaintiffs stand to recover significantly more than the Virginia plaintiffs, as the Complaint in the current action includes claims of wage and hour violations under Massachusetts law. Under MASS. GEN LAWS ch. 151 § 1B, an employer who fails to pay overtime is liable for treble damages. Thus, the Massachusetts plaintiffs could potentially recover treble damages on their overtime wage claims. *Id.* By contrast, the Virginia Complaint lacks claims for violations of state wage laws.

## 2. The Potential Class Includes All of Defendants' 10,000 Employees

In their Motion, Plaintiffs argue that § 1332(a) is not applicable because the instant action is a class action governed by CAFA, yet imply that the class may not consist of more than 100 members. Pursuant to the plain language of the statute, the jurisdictional provisions of CAFA are not applicable in cases where the number of members of the proposed class in the aggregate is less than 100. Thus, by arguing the applicability of CAFA, Plaintiffs admit that the class will necessarily include more than 100 individuals.

As noted above, in *Stickle* Defendants provided Plaintiffs with a list of employees who worked for various Service Corporation International subsidiaries. Within that list provided to Plaintiffs' counsel in connection with *Stickle*, there were 162 employees identified as working within Massachusetts. *See* List of Massachusetts Employees, attached as Exhibit 10; Declaration of Lonnie Williams, attached as Exhibit 3 ¶ 6.

Further, the class size will likely greatly exceed those numbers, as the plaintiffs have not limited the class to those employees who work or worked in Massachusetts. As provided above, in their Complaint, Plaintiffs state that Class Members include "those employees of Defendants who were suffered or permitted to work by Defendants and not paid their regular or statutorily required rate of pay for all hours worked." This broad description places virtually no limits on the potential class size, and accordingly, the class could include all of Defendants' 10,000 employees.

Moreover, although Plaintiffs contend the 10,000 employee figure has been inflated by including employees who would not have claims under the laws of Massachusetts, Plaintiffs cannot avoid federal jurisdiction by attempting to limit the nature of their claims after removal, as the inquiry must focus upon the amount in controversy at the time of removal. *See Amoche*, 556 F.3d at 51 ("Events subsequent to removal that reduce the amount in controversy below the jurisdictional minimum do not divest a federal court of jurisdiction."). At the time of removal, Plaintiffs had not attempted to narrow the scope of the putative class, instead broadly asserting that the class was comprised of all of Defendants' employees. Although non-residents might not have claims under Massachusetts's statutory scheme for recovery of unpaid overtime, Plaintiffs have alleged various other common law claims that non-residents could assert, based upon the same alleged withholding of wages, including breach of contract, fraud, unjust enrichment/restitution, breach of the implied covenant of good faith and fair dealing, conversion, and misrepresentation.

Plaintiffs also contend that Defendants should have provided the Court with additional information concerning the list of these 10,000 employees, such as what time period the list covers, or what categories of employees are on the list. However, Defendants have provided information concerning the scope of the employment record search, explaining that a court order restricted the list to certain employee job titles and to the period from December 2005 forward. *See* Exhibit 3. Furthermore, this Court, following the First Circuit's guidance, has explained that the defendant's burden at this stage is not "onerous" because little or no evidence has yet been produced, and the amount in controversy determination "should be done quickly, without an extensive fact-finding inquiry." *See id.* at 50 (quoting *Spielman v. Genzyme Corp.*, 251 F.3d 1, 4 (1st Cir. 2001)). *See also Manson*, 602 F.Supp.2d at 294; *Lenahan*, 2010 WL 5092254, at *1. As the *Amoche* Court explained, "[c]onsideration of this preliminary issue should not devolve into a mini-trial regarding the amount in controversy." *Amoche*, 556 F.3d at 50. Defendants have provided adequate information about the size of the putative class to permit calculation of the amount potentially "in controversy," based upon the allegations in the Complaint. Under the

standards adopted by this Court, Defendants need not provide any greater detail to establish a "reasonable probability" that the amount in controversy will exceed $5 million.

>    3.    Defendants Have Demonstrated a "Reasonable Probability" That The Amount in Controversy Exceeds $5,000,000

Assuming 162 Class Members, the total amount of potential liability necessary to meet the statutory amount in controversy requirement would be $30,865 for each Class Member.[8] However, based on Plaintiffs' arguments concerning tolling, the period of liability could potentially exceed five years.[9] Moreover, this calculation is conservative as to the number of potential Class Members and the average value of each Class Member's claim. Regarding the number of Class Members, Defendants' calculation is based solely on the number of Defendant's (and their subsidiaries') employees in Massachusetts. However, as provided above, plaintiffs have not limited the class to Defendants' Massachusetts employees. Accordingly, all of Defendants' (and their subsidiaries') 10,000 employees are potential Class Members. Thus, the average value of each potential Class Member's claim would only need to be $500 to reach the minimum requisite amount in controversy under CAFA.

Moreover, looking at the named Plaintiffs as examples, it becomes clear that the value of each Class Member's claim will far exceed the jurisdictional amount. Some or all of the Plaintiffs in this action are Plaintiffs in the *Stickle* action. In connection with *Stickle*, the Plaintiffs responded to certain Interrogatories. Those Interrogatories asked them to provide sworn statements regarding the number of alleged hours they claim they were not compensated for. A copy of the Answers for Plaintiffs John Finstein and Daniel McCauley are attached as Exhibits 11 and 12, respectively.

Based upon the Answers provided and the number of potential class members, it is clear that the statutory prerequisite is met in this case. For example, in his interrogatory responses, Plaintiff John Finstein alleges that he was not paid for over 900 hours of work per year, over the course of his

---

[8] This amount is the result of dividing the five million dollar jurisdictional amount by the 162 names contained in Exhibit 10.

[9] For example, the Massachusetts statute of limitations for contract claims is 6 years. *See* MASS. GEN. LAWS ch. 260 § 2.

employment.[10]   *See* Plaintiff John E. Finstein's Response to Defendants' First Set of Interrogatories, attached as Exhibit 11.  Finstein was employed by Defendants for approximately eleven years, from 1996 to 2007.  As noted above, assuming 162 Class Members, the total average amount of potential liability per class member to meet the statutory amount in controversy requirement would be $30,865.  As previously noted, Defendants also reviewed payroll records to determine the last known hourly rate for a sampling of employees named as plaintiffs in *Bryant v. Service Corporation International* and *Helm v. Alderwoods*.  The hourly rate for these employees varied from $7.14 to $26.52 per hour, or an average of $16.83.  *See* Exhibit 5 ¶ 13-14.  Finstein would be owed well over the average amount (940 unpaid hours per year times $16.83 per hour).  Assuming a liability period of two years, based upon the applicable statute of limitations,[11]  This figure also does not include overtime pay or liquidated damages, both of which were alleged in this case.  Moreover, under Massachusetts law, he would be entitled to recover treble that amount as liquidated damages; thus, he could recover much more on his overtime claim alone, assuming a two year period of liability.  *See* MASS. GEN. LAWS ch. 151 § 1B (imposing a penalty of treble damages upon an employer who fails to pay overtime).

In his interrogatory responses, Plaintiff Daniel McCauley alleges that he was not paid for approximately 1337 hours of work,[12] over the course of his employment.[13]  *See* Plaintiff Daniel Patrick McCauley's Response to Defendants' First Set of Interrogatories, attached as Exhibit 12.   Again,

---

10 Mr. Finstein's answer to Interrogatory No. 5 lists hours that he claims he was not paid, in the following amounts: 4 hours per week for community work, 2 hours per month for pre-needs sales work, 5 hours per month for meal breaks, and 54 hours per month of overtime. *See* Exhibit 11, p. 5-6.  This is a total of 940 hours per year.
11 The statute of limitations for an action under chapter 151 of Massachusetts's wage and hour laws is 2 years.  *See* MASS. GEN. LAWS ch. 151 § 20A.  Plaintiffs seek payment of overtime, as well as treble damages, under chapter 151.  However, the period of liability could be much longer on some of Plaintiffs' claims, as the Massachusetts statute of limitations for tort actions is 3 years, *see* MASS. GEN. LAWS ch. 260 § 2A, and the statute of limitations for contract actions is 6 years.  *See* MASS. GEN. LAWS ch. 260 § 2.
12 McCauley claims he was not compensated for 40 hours of community work, 80 hours of training, and 3 hours per week for meal breaks.  He also claims he was not compensated for 320 hours of overtime, plus an additional 6 hours per week of overtime.  Assuming 52 weeks in a year, this calculates to 1337 hours.
13 McCauley alleges that he was employed by Defendants for approximately one year and eleven months, from August 2007 to July 2009.

considering the average rate of $16.83 and the possibility of trebling, Mr. McCauley's claim (based upon only two years of work) meets the average necessary to meet the jurisdictional limit.

Accordingly, looking solely at the named Plaintiffs as examples, it is clear that the average value of each Class Member's claim is likely much greater than $500. Further, the potential period of limitations could exceed five years. Thus, for employees with longer tenure working for Defendants, their claims will likely mirror those of Plaintiff Finstein or McCauley, greatly exceeding the $500 average. Further, even Plaintiffs who worked for the Defendants for only a short time will have claims that greatly exceed the $500 average.

Further, if the claims of the named Plaintiffs were representative of the claims of the 162 potential Class Members in just Massachusetts, the potential damages would easily exceed $5 million. Assuming 162 Class Members, Defendants' liability to each need only average $39,865 for CAFA's amount in controversy requirement to be satisfied. That amount includes the impact of trebling. Again, these are the most conservative possible estimates, as they are based only on the overtime claims, assume that the class is exclusively comprised of Massachusetts employees, and assume that each class member receives minimum wage.

Further, the Plaintiffs' potential compensatory damages are not the only figures the Court should examine in determining whether CAFA's jurisdictional requirements are satisfied.[14] In their Complaint, the Plaintiffs also seek attorneys' fees. The First Circuit has held that attorneys' fees should be considered in calculating jurisdictional requirements for class action claims, where "a statute mandates or allows payment of the fees." *Spielman v. Genzyme*, 251 F.3d 1, 7 (1st Cir. 2001) (citing *Velez v. Crown Life Ins. Co.*, 599 F.2d 471, 474 (1st Cir. 1979)). *See also Lowdermilk v. U.S. Bank Nat'l Ass'n*, 479 F.3d 994, 1000 (9th Cir. 2007) (holding that attorneys' fees may be considered in calculating CAFA's amount in controversy requirement where authorized by state law); *Frederico v. Home Depot*, 507 F.3d 188, 199 (3d

---

[14] Plaintiffs also seek punitive damages on their fraud and conversion claims. (Compl. ¶ ¶ 280, 314.) However, under Massachusetts law, punitive damages are available only where authorized by statute. *Haddad v. Wal-Mart Stores, Inc.*, 914 N.E.2d 59, 75 (Mass. 2009).

Cir. 2007) (considering the amount of attorneys' fees, which could have been as much as thirty percent of plaintiffs' potential judgment, in determining whether CAFA's amount in controversy requirement was satisfied). Massachusetts law permits the recovery of attorneys' fees on unpaid overtime claims under the treble damages provision at MASS. GEN. LAWS ch. 151 § 1B, which Plaintiffs have invoked. *See* MASS. GEN. LAWS ch. 151 § 1B ("An employee so aggrieved who prevails in such an action shall be awarded treble damages, as liquidated damages, for lost overtime compensation and shall also be awarded the costs of the litigation and reasonable attorneys' fees"). Thus, the amount of Plaintiffs' potential recovery of attorneys' fees should be considered in determining the amount in controversy.[15]

Finally, Plaintiffs have also sought injunctive relief in the form of an order "permanently restraining defendants from engaging in the aforementioned pay violations." (Compl. "Prayer for Relief," p. 31.) The law is clear that in actions seeking declaratory or injunctive relief, the amount of controversy is measured by the value of the object of the litigation. *Hunt v. Wash. State Apple Adver. Comm'n*, 432 U.S. 333, 347 (1977). Therefore, in calculating the amount in controversy, the Court should also consider the cost to Defendants of complying with such an order. *Richard C. Young & Co., Ltd. v. Leventhal D.D.S.*, 389 F.3d 1, 3 (1st Cir. 2004) (explaining that the court should consider the costs of complying with an injunction in calculating the amount in controversy); *Manson v. GMAC Mortgage*, LLC, 602 F.Supp.2d 289, 294 (D. Mass. 2009) (concluding that the defendant satisfied its burden of demonstrating to a "reasonable probability" that the amount in controversy would exceed CAFA requirements, in part because the plaintiffs sought injunctive or declaratory relief in the form of a "cancellation of fees and

---

[15] In *Spielman v. Genzyme*, 251 F.3d 1 (1st Cir. 2001), the court concluded that attorneys fees cannot be aggregated to demonstrate the amount in controversy under 28 U.S.C. § 1332(a). However, as this Court has recognized, *Spielman* was decided prior to the enactment of CAFA, which specifically permits the aggregation of damages. *See Blumer v. Acu-Gen Biolabs, Inc.*, 638 F.Supp.2d 81, 87 n. 5 (D. Mass. 2009). Moreover, "[s]ister circuits examining the issue after CAFA's enactment have held that where the relevant state law statutes authorize the recovery of attorney's fees, CAFA class actions properly may include the attorney's fees in their jurisdictional amount in controversy calculations." *Id. See also Lowdermilk*, 479 F.3d at 1000; *Frederico*, 507 F.3d at 199. Thus, this Court should permit Defendants to calculate the amount in controversy for removal purposes by including the statutorily authorized award of attorneys' fees and aggregating the putative plaintiffs' fees.

costs for invalid sale processes"). When the potential attorneys' fees are included along with the trebled damages in the calculation of the amount in controversy, the $5,000,000 jurisdictional threshold is easily satisfied. *See Manson,* 602 F.Supp.2d at 294.

## III.   CONCLUSION

For the foregoing reasons, Defendants have shown by a preponderance of the evidence facts that suggest that Plaintiffs collectively seek an amount greater than $5,000,000. Defendants have therefore satisfied their burden of demonstrating a reasonable probability that the amount in controversy exceeds the threshold for federal jurisdiction under CAFA, 28 U.S.C. § 1332(d). Accordingly, Defendants respectfully request that the Court deny Plaintiffs' Motion to Remand to State Court.

Respectfully submitted this 19th day of January, 2011

/s/ Patrick M. Curran, Jr.
Patrick M. Curran, Jr. (BBO # 659322)
Ogletree, Deakins, Nash, Smoak & Stewart, P.C.
One Boston Place, Suite 3220
Boston, MA 02108
Tel. (617) 994-5700
Fax (617) 994-5701
patrick.curran@ogletreedeakins.com

OF COUNSEL:

Lonnie J. Williams, Jr.
Stinson, Morrison Hecker LLP
1850 N. Central Ave.
Suite 2100
Phoenix, Arizona 85004
Tel. (602) 212-8505
Fax (602) 586-5272
lwilliams@stinson.com

Attorneys for Service Corporation International, SCI Funeral and Cemetery Purchasing Cooperative, Inc., SCI Eastern Market Support Center, L.P., Jane D. Jones, Gwen Petteway, and Thomas Ryan

## CERTIFICATE OF SERVICE

I hereby certify that this document filed through the ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF) and paper copies will be sent to those indicated as non-registered participants on this 19th day of January, 2011.

/s/ Patrick M. Curran, Jr.
Patrick M. Curran, Jr. (BBO # 659322)

9699293.1 (OGLETREE)

21